IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**District Judge Raymond P. Moore**

Civil Action No. 12-cv-01919-RPM

ANTHONY J. LUCERO,

      Applicant,

v.

ANGEL MEDINA, Warden, and
JOHN SUTHERS, The Attorney General of the State of Colorado,

      Respondents.

---

### ORDER DENYING APPLICATION FOR A WRIT OF HABEAS CORPUS

---

This matter is before the Court on Anthony Lucero's pro se Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 challenging the validity of his conviction and sentence imposed in Case No. 86CR653 in the Jefferson County District Court. Remaining for disposition are claims 1, 2, 6(ii) and 6(iv) asserted in the Application. Respondents have filed an Amended Answer to those claims and Applicant was afforded an opportunity to file a Reply. Having considered the Application and the Respondent's Amended Answer, along with the state court record, the Court concludes that the Application should be denied.

**I. Background**

In June 1987, Applicant was convicted by a jury of felony murder, attempted aggravated robbery, and two counts of crime of violence in Jefferson County District Court Case No. 86CR653. [Doc. # 1, at 2 of 88]. He was sentenced to life in prison.

[*Id.*]. On direct appeal, the Colorado Court of Appeals vacated the attempted aggravated robbery

conviction and sentence as included within the felony murder conviction and one crime of violence count, but otherwise affirmed the conviction. *See People v. Lucero* (*Lucero I*), No. 91CA1261 (Colo. App. May 16, 1991) (unpublished). [Doc. # 11-15]. Applicant's request for certiorari review was denied by the Colorado Supreme Court on May 11, 1992. [Doc. # 11-2]. On remand, Applicant was resentenced to life in prison with the life sentence to run consecutive to the sentences he already was serving. [State Court R., Court File, Amended Mittimus, dated 10/5/92]. Applicant then filed a motion for post-conviction relief pursuant to Colo. R. Crim. P. 35(c), which was denied by the state district court on August 6, 2008. [Doc. # 11-1, at 6]. The Colorado Court of Appeals affirmed the trial court's order in *People v. Lucero* (*Lucero II*), No. 08CA1973 (Colo. App. August 11, 2011) (unpublished). [Doc. # 11-6]. The Colorado Supreme Court denied Applicant's petition for certiorari review on June 25, 2012. [Doc. # 11-2].

Applicant initiated this action on July 23, 2012. He asserts the following claims in the Application:

(1)    (A) The trial court violated his procedural due process rights in failing to hold a competency hearing sua sponte;
(B) Trial counsel was constitutionally ineffective in failing to adequately investigate and pursue the competency issue;
(C) The trial court violated his substantive due process rights in allowing him to be tried even though he was incompetent.

(2)    (A) Trial counsel was constitutionally ineffective in failing to:

(I) impeach or cross-examine witness Valerie Brave about why she left her children and grandchildren with Applicant if they were afraid of him; (ii) impeach or cross-examine witness David Brave about why he spent Applicant's money without asking if he was afraid of Applicant; (iii) investigate and present evidence that witnesses Stands and Brave were regularly paid informants of the Bureau of Indian Affairs; (iv) make a record of witness Donald LeBlanc's identification of Applicant's co-defendant outside the jury's presence; (iv) impeach Mr. LeBlanc about his prior

2

inconsistent statements; (v) investigate and cross-examine on specific issues concerning Applicant and the co-defendant; (vi) force the disclosure of confidential informants; and, (vii) the cumulative omissions of trial counsel prejudiced Applicant at trial.

(B) Appellate counsel was constitutionally ineffective in failing to properly raise the severance claim.

(3)     The trial court violated Applicant's due rights in denying his request for severance.

(4)     Cumulative errors deprived Applicant of his due process right to a fair trial.

(5)     The trial court's denial of Applicant's challenges for cause to potential jurors violated his right to a fair trial.

(6)     The trial court violated Applicant's constitutional rights by failing to disqualify or at least sanction the district attorneys based on the following prosecutorial misconduct:

(I) The prosecution failed to provide the defense with co-defendant's statements to law enforcement officers;

(ii) An eye-witness statement was lost or destroyed;

(iii) *Ex parte* hearings were held in spite of Applicant's   objection; and

(iv) The Prosecution called Applicant and co-defendant "chili-eating bastards."

(7)     Codefendant's new affidavit supports Applicant's innocence.

[Doc. # 1, at 7-25].

Upon preliminary review of the Application, Magistrate Judge Boyd N. Boland ordered the Respondents to file a pre-answer response addressing the affirmative defenses of timeliness and exhaustion of state remedies.  Respondents conceded that the Application was timely under the one-year limitation period set forth in 28 U.S.C.

§ 2244(d)(1).  [Doc. # 11, at 4-6].  Respondents further conceded that Applicant exhausted state court remedies for claims one and two asserted in the Application.  Respondents argued that the remaining claims were procedurally defaulted or not cognizable on federal habeas corpus.  [*Id*. at 17-51].  In a previous Order, District Judge Philip A. Brimmer dismissed claims three, six (I) and (iii), and the severance portion of claim four, as procedurally barred.  [Doc. # 19, at 19].  Claims five and seven were dismissed for failure to state a cognizable habeas claim. [*Id.*].

The Court reviews the merits of claims one, two, four (except for severance error), six (ii) and (iv) below.

## II.  LEGAL STANDARDS

### A.  28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The applicant bears the burden of proof under § 2254(d).  *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim.  *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011).  In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state

4

court explaining the state court's reasoning." *Id*. at 784. Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id*. at 784-85. Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas Applicant's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id*. at 784. In other words, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the court "must uphold the state court's summary decision unless [the court's] independent review of the record and pertinent federal law persuades [the court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id*. at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id*.

The *Richter* presumption is also applicable when a state-court opinion addresses some but not all of those claims. *Johnson v. Williams*, 133 S. Ct. 1088, 1094-98 (2013). For purposes of § 2254(d), when a state court rules against a defendant in an opinion that rejects some of the defendant's claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Id*. at 1094-96. Federal habeas courts should not assume that any unaddressed federal claim simply was overlooked because a state court does not uniformly discuss separately every claim referenced by a defendant. *Id*.

5

The court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question the court must answer under § 2254(d)(1) is whether Mr. Pena seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1). *See id*. at 1018.

If a clearly established rule of federal law is implicated, the court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id*. at 407-08. Additionally, we have recognized that an unreasonable application may occur if

6

the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409–10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. In addition,

> evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 131 S. Ct. at 786 (internal quotation marks omitted). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* Moreover, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 131 S.Ct. at

786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S.Ct. 786–87.

The court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows the federal court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the court must presume that the state court's factual determinations are correct and the petitioner bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller–El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).

## B. PRO SE LITIGANT

Applicant is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume

8

that an applicant can prove facts that have not been alleged, or that a respondent has violated laws in ways that an applicant has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). The applicant's pro se status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## III. LEGAL ANALYSIS

### A. Competency to Stand Trial

In claim one, Applicant challenges his competency to stand trial. He asserts that the trial court violated: (a) his procedural due process rights in failing to hold a competency hearing sua sponte; and (b) his substantive due process rights in allowing him to be tried even though he was incompetent.[1] [Doc. # 1, at 7-14].

### 1. Relevant facts

The following facts are relevant to Applicant's first claim for relief.

Four months after Applicant was arraigned and entered a plea of not guilty, the state trial court granted defense counsel's motion to appoint a psychiatrist to evaluate Applicant's competency for the purpose of determining whether to change his plea to not guilty by reason of insanity. [State Court R., Court File, at 450-51; 3/13/87 Hrg. Tr. at 19; *see also Lucero I*, Doc. # 11-15, at 6; *Lucero II*, # 11-6, at 8]. Defense counsel hired Dr. Dean Plazak, who conducted an evaluation and diagnosed Applicant as suffering from an acute, chronic "schizophrenic disorder, paranoid type." [*Lucero II*, Doc. # 11-6, at 8; *see also* Doc. # 1, at 31-37 (copy of Dr. Plazak's

---

[1]Applicant also asserts an ineffective assistance of counsel claim as part of claim one. The Court addresses that allegation in claim two, together with his other allegations of ineffective assistance of counsel.

April 23, 1987 report (restating paragraph from earlier report))]. Nonetheless, Dr. Plazak concluded:

> [Applicant] does appear to understand the nature and course of the proceedings against him, although he does strongly insist on incorporating those events as part of the conspiracy he believes exists against him, is aware of the seriousness of the charges and the potential penalties if convicted, and has demonstrated, according to his counsel, that he is capable of participating, assisting and cooperating with his defense counsel. Thus this examiner is of the opinion that [Applicant] meets the statutory criteria for competency to proceed.

[*Lucero II*, Doc. # 11-6, at 9; *see also* Doc. # 1, at 31-37]. The trial court reviewed Dr. Plazak's report and concluded that it "did not purport to opine that Applicant is or was insane." [State Court R., 4/10/87 Hrg. Tr., at 4]. The trial court further found that in the early stages of the case, defense counsel filed a request that Applicant be permitted to participate as co-counsel, which is "totally inconsistent with him being insane." [*Id.*; *see also Lucero II*, Doc. # 11-6, at 6]. In addition, the trial court observed that Applicant's conduct before the court had been "reasonable and disciplined." [*Id.*].

Just before jury selection began, defense counsel told the trial court that Applicant was having auditory and visual hallucinations. [State Court R., 4/28/87 Hrg. Tr., at 86]. Counsel for co-defendant then requested that Applicant be subject to a mental competency examination, raising the issue of whether the Applicant was "of an infirm mind, and therefore, [whether] he presents a danger to my client during the proceedings here." [*Id.* at 87-88; *see also Lucero II*, Doc. # 11-6, at 7]. After noting that Applicant's own counsel had not requested a competency exam, the trial court concluded Applicant's competency was not "an issue" and that the security in the courtroom was adequate to handle any eventuality. [State Court R., 4/28/87 Hrg. Tr., at 88; *see also Lucero II*, Doc. # 11-6, at 9].

### 2. Controlling federal law

A criminal defendant has a federal due process right not to be tried while mentally incompetent. *Drope v. Missouri*, 420 U.S. 162, 172 (1975). A defendant is competent to stand trial if he has (1) "a rational as well as factual understanding of the proceedings against him," and (2) "sufficient present ability to consult with his lawyer with a reasonable degree of understanding." *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam).

"[T]he failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." *Drope*, 420 U.S. at 172 (citing *Pate v. Robinson*, 383 U.S. 375, 378 (1966)). Although the Supreme Court has not "prescribe[d] a general standard with respect to the nature or quantum of evidence necessary to require resort to an adequate procedure," *id.*, it has held that a hearing is required where the evidence before the trial judge raises a "bona fide doubt" as to a defendant's competence. *Pate*, 383 U.S. at 385 ("Where the evidence raises a 'bona fide doubt' as to a defendant's competence to stand trial, the judge on his own motion must impanel a jury and conduct a sanity hearing pursuant to [the Illinois competency statute at issue]."). *See also Porter v. McKaskle*, 466 U.S. 984, 985–86 (1984) (Marshall, J., dissenting) ("It is settled that, if evidence available to a trial judge raises a bona fide doubt regarding a defendant's ability to understand and participate in the proceedings against him, the judge has an obligation to order an examination to assess his competency, even if the defendant does not request such an exam.") (citing *Drope* and *Pate*); *Drope*, 420 U.S. at 172–73 (stating that the *Pate* Court "noted that under the Illinois statute a hearing was required where the evidence raised a 'bona fide doubt' as to a defendant's competence.

Evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial, as well as defense counsel's assessment, are all relevant in determining whether further inquiry is required under *Pate*. *See Drope*, 420 U.S. at 180; *Medina v. California*, 505 U.S. 437, 450 (1992).

A substantive competency claim is based on the allegation that an individual was tried and convicted while incompetent. *Drope*, 420 U.S. at 171; *Bishop v. United States*, 350 U.S. 961 (1956).

### 3. Procedural due process

Applicant asserts that his procedural due process rights were violated when the state trial court failed to hold a competency hearing sua sponte.

At the time of Applicant's trial, COLO. REV. STAT. ("C.R.S.") § 16-8-111 (1987) set forth the procedure for determining incompetency and provided, in relevant part:

> (1) Whenever the question of a defendant's competency to proceed is raised, the court shall make a preliminary finding either that the defendant is competent to proceed or that he is not.
> . . . .
>
> (2) The court shall immediately notify the prosecuting attorney and defense counsel of the preliminary finding. If neither the prosecuting attorney nor defense counsel requests, in writing, a hearing within a time limit set by the court, the preliminary finding becomes a final determination.

The Colorado Court of Appeals determined that the trial court's finding at the time of jury selection that Applicant's competency was not "an issue" and its denial of Applicant's motion to continue the trial constituted the requisite finding of competency. [*Lucero II*, Doc. # 11-6, at 10]. The state appellate court further ruled that "[a]bsent any objection to the court's

12

finding, no further proceeding was required before the court's preliminary finding became a final determination of competency." [*Id.*].

The state appellate court's decision that no evidentiary hearing was required on the issue of Applicant's competency comports with Supreme Court law because there was no evidence before the trial judge that raised a "bona fide doubt" as to a Applicant's competence. *Pate*, 383 U.S. at 385. The state courts' factual findings concerning Applicant's competence to stand trial are presumed correct in this federal habeas proceeding. *Bryson v. Ward*, 187 F.3d 1193, 1201 (10th Cir. 1999) (state court's finding on the issue of a criminal defendant's competency to stand trial is a factual finding that is presumed correct under 28 U.S.C. § 2254(e)(1)). Those findings are supported by the state court record and have not been rebutted by the Applicant with any clear and convincing evidence. Importantly, Dr. Plazak's report did not opine that Applicant was incompetent to stand trial. In addition, the state trial court found that Applicant's demeanor in the pretrial proceedings was inconsistent with mental incompetency. Moreover, as the state appellate court found in the context of addressing Applicant's ineffective assistance of counsel claim, the observations of counsel concerning Applicant's mental condition were consistent with Dr. Plazak's diagnosis, but not inconsistent with the conclusion that Applicant was competent. (*Lucero II*, Doc. # 11-6, at 14). *See Miles v. Dorsey*, 61 F.3d 1459, 1472 (10th Cir. 1995) ("The presence of some degree of mental disorder in the defendant does not necessarily mean that he is incompetent . . . ."). And, finally, after the trial court ruled approximately one month before trial that Applicant was competent and denied his request to continue the trial so that Dr. Plazak could further evaluate him [*see* State Court R., 4/11/87 Hrg. Tr.], defense counsel did not continue to litigate the issue of Applicant's competence. *See Mitchell v.* Gibson, 262 F.3d 1036,

1048 (10th Cir. 2001) (" . . . a doubt sufficient to require an expert evaluation may be overcome by the results of the evaluation itself, especially when considered together with other indications of competency").

The Court is not aware of any Supreme Court precedent that would suggest the state trial court violated Applicant's Fourteenth Amendment procedural due process rights, and Applicant has not identified any such precedent.  Instead, the state appellate court reasonably determined that the trial court did not err in failing to provide Applicant a competency hearing.  *See Bryson*, 187 F.3d at 1201-02 (recognizing that the trial court may rely on its own observations of a defendant's comportment and that the concerns of counsel, without more, are insufficient to establish doubt of a defendant's incompetency) (citing *Drope*); *see also Clayton v. Gibson*, 199 F.3d 1162, 1171 (10th Cir. 1999) (suggesting that a prior medical opinion concerning the defendant's competency is the most important factor in the procedural due process analysis). Accordingly, Applicant cannot prevail on his procedural due process claim.

## 4. Substantive due process

Applicant next contends that his substantive due process rights were violated because he was tried while incompetent.

Because Applicant has not pointed to any evidence in the record that would have required a *Pate* hearing at or before trial, he has also failed to satisfy the more demanding standard for a substantive due process claim. *See Allen v. Mullin*, 368 F.3d 1220, 1240 (10th Cir. 2004); *Walker v. Attorney Gen. for State of Oklahoma*, 167 F.3d 1339, 1347 (10th Cir. 1999).

Applicant seeks to rely on the following evidence, which was not before the state trial court, to prove his incompetency:

14

- Hospital records from 1989 pertaining to treatment [Applicant] received more than two years after trial that confirmed Dr. Plazak's diagnosis;
- A retained expert's August 1, 2005, report that he "did not see evidence of a comprehensive competency assessment" in Dr. Plazak's evaluation, and that the basis for Dr. Plazak's conclusions were "unclear and there was no documented evidence about how he reached his final clinical opinions";
- A motion filed more than one year after trial to hold in abeyance the appeal of another case in which [Applicant] was involved, due to his alleged incompetency;
- A 2008 affidavit from attorney David Lane, who filed the motion to hold in abeyance, stating that he believed [Applicant] "was mentally ill and incompetent to assist in his appeal"; and
- a 1995 affidavit signed by co-defendant Borrego, averring that, at the time of trial, he "believed [Applicant] was suffering from paranoid delusions."

[Doc. # 1, at 13].

The Colorado Court of Appeals determined that the motion to hold in abeyance was not material to the issue of Applicant's incompetency because it did "not illuminate [Applicant's] mental condition at the time of trial." [*Lucero II*, Doc. # 11-6, at 20]. The state appellate court further decided that the post-trial statements and affidavits concerning Applicant's mental condition did not contradict Dr. Plazak's finding of competency. [*Id.* at 21].

With regard to Applicant's 1989 hospital records and the retained expert's report, those documents did not exist at the time of trial. [*Id.*]. The Colorado Court of Appeals, citing *Nguyen v. Reynolds*, 131 F.3d 1340 (10th Cir. 1997), determined that the new evidence failed to "positively, unequivocally and clearly generate a real, substantial and legitimate doubt concerning [Applicant's] mental capacity." *Id.* at 1346. The state appellate court found that while the 1989 hospital records corroborated Dr. Plazak's diagnosis, they did not directly address Applicant's competency at the time he was tried. [*Lucero II*, Doc. # 11-6, at 22-23]. The state appellate court further found that the retained expert's report challenged the validity of Dr. Plazak's methodology, but did not address competency. [*Id.* at 23]. The Colorado Court of

15

Appeals concluded that even if the trial court had received the retained expert's report, there was no reasonable probability that the court would have reached a different conclusion about Applicant's competency, in light of the trial court's own observations of Applicant's "reasonable and disciplined" demeanor. [*Id.*].  The state appellate court concluded that Applicant "was not tried while incompetent." [*Id.* at 24].

The Court finds that the Colorado Court of Appeals' determination was a reasonable application of *Pate* and *Dusky*.  None of the evidence relied on by Applicant demonstrates that, at the time of trial, he lacked either sufficient ability to consult with his lawyer with a reasonable degree of rational understanding or a rational and factual understanding of the proceeding.  Post-conviction counsel's assessment of Applicant's competency one year after trial is insufficient to undermine Dr. Plazak's evaluation of Applicant, which was supported by the trial court's observations of Applicant's mental capacity.  *See Allen*, 368 at 1240 (defense counsel's declaration of defendant's incompetency ten years after trial was insufficient to overcome contrary opinions at time of trial).  Furthermore, although the 1989 hospital records and 2005 expert report raise questions concerning Defendant's mental capacity, nothing in those documents clearly and unequivocally contradicted Dr. Plazak's opinion that Applicant was competent to stand trial or otherwise demonstrated Applicant's incompetency.  *Id.*; *see also Foster v. Ward*, 182 F.3d 1177, 1191 (10th Cir. 1999) (in light of psychiatric finding of competency prior to trial and of defendant's conduct and demeanor at trial, including his own testimony, doctor's opinion ten years later that defendant was incompetent was inadequate to demonstrate a substantive due process violation).

16

In sum, Applicant is not entitled to federal habeas relief for his first claim.

**B. Ineffective Assistance of Trial Counsel**

For his second claim, Applicant asserts that: (A) his trial counsel was constitutionally ineffective in failing to: (I) adequately investigate and pursue the competency issue;[2] (ii) impeach or cross-examine witness Valerie Brave about why she left her children and grandchildren with Applicant if they were afraid of him; (iii) impeach or cross-examine witness David Brave about why he spent Applicant's money without asking if he was afraid of Applicant; (iv) investigate and present evidence that witnesses Stands and Brave were regularly paid informants of the Bureau of Indian Affairs; (v) make a record of witness Donald LeBlanc's identification of Applicant's co-defendant outside the jury's presence; (v) impeach Mr. LeBlanc about his prior inconsistent statements; (vi) investigate and cross-examine on specific issues concerning Applicant and the co-defendant; (vii) force the disclosure of confidential informants; and, (vii) that the cumulative omissions of trial counsel prejudiced Applicant at trial. [Doc. # 1, at 14-16]. He further claims that his counsel on direct appeal was constitutionally ineffective in failed to adequately argue error in the denial of severance from co-defendant Borrego. [*Id.* at 16].

To prevail on his claims that trial counsel was constitutionally ineffective, Applicant must show that: (1) counsel's legal representation fell below an objective standard of reasonableness; and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel's decisions are presumed to represent "sound trial strategy;"

---

[2]Applicant raised this allegation as part of his first claim for relief, but it is more appropriately discussed as part of his second claim.

"[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999) (internal quotations omitted). Under the AEDPA standard of review, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 131 S.Ct. at 788.

Prejudice exists when there is a reasonable probability that, but for counsel's defective representation, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 693. The likelihood of a different result must be substantial, not just conceivable. *Id.* The Court need not address both prongs of the *Strickland* inquiry if Applicant's claim fails on one. *Id.* at 697.

## 1. Failure to adequately investigate and pursue the competency issue

Applicant asserts that his trial counsel's failure to adequately investigate and pursue the competency issue constituted deficient performance.

The Colorado Court of Appeals disagreed, based on the following reasoning:

> Here, the record shows that trial counsel provided effective assistance by raising defendant's mental condition with the trial court, seeking funds for a psychiatric evaluation, and hiring Dr. Plazak. Nevertheless, [Applicant] asserts that "Dr. Plazak's report made it clear that [Applicant] suffered from a mental disease or defect, and yet trial counsel did not request additional psychological or psychiatric evaluations on the issue of competency." But in light of Dr. Plazak's finding that [Applicant] was competent, [Applicant] fails to explain why his counsel should have looked for additional information suggesting his incompetency, nor can we discern any such reason.
>
> Further, even if counsel should have raised the competency issue with the court after Dr. Plazak's evaluation, failure to do so could not have harmed [Applicant]. [Co-defense counsel] Wymore requested that the court order a competency evaluation. The record affords no basis for assuming a different ruling had [Applicant's] counsel joined in this request.

18

[Applicant] cites the following "additional evidence" that he claims shows counsel's ineffectiveness because it was "available at the time to establish [Applicant's] incompetency," but was never presented to the trial court:

- a 1995 affidavit signed by [co-defendant] Borrego, averring that, at the time of trial, he "believed [Applicant] was suffering from paranoid delusions";
- a 1995 affidavit from Ruben Muniz, an acquaintance of [Applicant's] for many years, that stated: "between 1984 and 1986, I observed Anthony Lucero only occasionally but often enough to know that Anthony's mental and emotional condition was deteriorating," and that "when I discovered that Anthony Lucero was arrested and charged for an alleged bank robbery and murder, it was my belief that if he had in fact been involved that it was solely the result of his mental illness";
- a 1996 notarized statement from Carl Smith, who was incarcerated with [Applicant] immediately before [Applicant's] trial, that noted [Applicant's] conversations were sometimes "wandering and disjointed" but at other times "lucid and flowing with his thoughts";
- an investigator's report from a 1996 interview with [Applicant's] mother, and a similar report from a 2001 interview with her, that [Applicant] was mentally ill and acting strangely at the time of trial; and
- an unsubstantiated assertion that Wymore believed [Applicant] was "likely not competent" at the time of trial.

The existence of such information does not establish ineffectiveness because trial counsel had no reason to solicit lay opinions to counter Dr. Plazak's competency findings, which were based, in part, on interviews with several people close to [Applicant], including his mother.

Moreover, with the exception of Wymore who, as an experienced criminal defense lawyer, presumably understood legal competency, none of the other potential witnesses would have been qualified to opine on the statutory standard. As discussed further below, a mental disease or defect is not, by itself, sufficient to establish incompetency. [State case law citation omitted]. And Wymore's purported opinion was at least implicit in his request to have [Applicant] evaluated. Thus, even if trial counsel should have found and could have presented this evidence, [Applicant] has not shown prejudice because these descriptions of his mental condition are consistent with Dr. Plazak's diagnosis but not inconsistent with the conclusion that [Applicant] was incompetent.

19

Accordingly, we conclude that counsel's assistance was not ineffective. Thus, we necessarily reject [Applicant's] further assertion that defense counsel was so ineffective as to have constructively denied him his Sixth Amendment right to counsel.

[*Lucero II*, Doc. # 11-6, at 11-15].

Under *Strickland*, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 690-91. A particular decision not to investigate must be assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. *Id.* Here, the state appellate court's conclusion that defense counsel made a reasonable decision not to further investigate Applicant's competency after receiving a report from Dr. Plazak that Applicant was competent comported with *Strickland*. *See Rompilla v. Beard*, 545 U.S. 374, 382-83 (2005) ("the duty to investigate does not force defense lawyers to scour the globe on the off-chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation will be a waste"); *Bell v. Thompson*, 545 U.S. 794, 810 (2005) (suggesting that initial expert evaluations that petitioner did not suffer from a mental disorder would provide an adequate basis for the petitioner's trial attorneys to conclude that focusing on petitioner's mental health "was not the best strategy"); *Jermyn v. Horn*, 266 F.3d 257, 301-02 (3rd Cir. 2001) ("counsel did not sit idly by" while failing to recognize that defendant might be incompetent; on the contrary, he obtained a competency evaluation, and the court presumed that counsel's election against seeking another court-ordered evaluation or a competency hearing was based on the earlier evaluation and a strategic decision that no further inquiry was necessary.)

Furthermore, the state appellate court reasonably concluded that Applicant was not prejudiced by defense counsel's failure to conduct any additional investigation because the

information proffered by Applicant did not tend to refute Dr. Plazak's finding of competency. A criminal defendant who suffers from a mental disability is not necessarily incompetent. *Miles*, 61 F.3d at 1472; *Locust v. Parker*, No. 10-5121, 413 F. App'x 51, 56 (10th Cir. Feb. 15, 2011) (unpublished). Because nothing in the state court record demonstrates that, at the time of trial, Applicant lacked a "rational [and] factual understanding of the proceedings against him" or a "sufficient present ability to consult with his lawyer with a reasonable degree of understanding," *see Dusky*, 362 U.S. at 402, there is no reasonably probability that the outcome of Applicant's trial would have been different absent counsel's alleged defective performance.

The Court finds that the Colorado Court of Appeals' determination of Applicant's claim was a reasonable application of *Strickland*. Applicant is not entitled to federal habeas relief for claim 2(I).

### 2. Failure to impeach or cross-examine Valerie Brave

Next, Applicant claims that his trial counsel was ineffective in failing to impeach or cross-examine witness Valerie Brave about why she left her children and grandchildren with Applicant if they were afraid of him. [Doc. # 1, at 14-15].

The Colorado Court of Appeals determined that this contention failed to establish inadequate representation by defense counsel for the following reason:

> Defense counsel thoroughly cross-examined Valerie Brave. Thus, [Applicant] fails to explain why counsel was required to impeach her with a further question about why she had left [Applicant] with her children, if she supposedly feared him. [State case law citation omitted].

(*Lucero II*, Doc. # 11-6, at 27).

The state appellate court's factual finding that defense counsel conducted a thorough cross-examination of Valerie Brave is supported by the state court record and has not been

21

rebutted by the Applicant. (*See* State Court R. 5/22/87 Trial Tr., at 195-205). The Colorado Court of Appeals reasonably concluded that defense counsel's failure to ask the witness a single question about why she left Applicant with her children and grandchildren was the result of reasonable trial strategy. Applicant makes no reasonable argument that counsel failed to satisfy *Strickland*'s deferential standard. *Richter*, 131 S.Ct. at 788.

Furthermore, Applicant fails to show a reasonable probability that he would have been acquitted, had counsel asked this additional question. Applicant's speculation that the outcome of his trial might have been different does not satisfy *Strickland*. *See Strickland*, 466 U.S. at 693 (the likelihood of a different result must be substantial, not just conceivable); *United States v. Boone*, 62 F.3d 323, 327 (10th Cir.1995).

Accordingly, Applicant cannot prevail on claim 2(ii).

### 3. Failure to cross-examine or impeach David Brave

Applicant next challenges trial counsel's failure to impeach or cross-examine David Brave about why he spent Applicant's money without asking if he was afraid of Applicant. [Doc. # 1, at 15]. The state appellate court resolved this claim as follows:

> [Applicant's] assertion that counsel was ineffective by not cross-examining David Brave about why he spent [Applicant's] money without asking, which he argues contradicts Brave's testimony that he was afraid of [Applicant], is factually incorrect. On direct examination, Brave said [Applicant] had given him this money.

[*Lucero II*, Doc. # 11-6, at 29].

Brave testified on direct examination that Applicant gave him $300 to buy an automatic weapon for Applicant, but Brave spent some of the money on alcohol and returned the rest to Applicant the following day. [State Court R., 5/22/87 Trial Tr., at 225-26]. The Colorado Court

of Appeals' determination of Applicant's claim did not run afoul of *Strickland* because the record shows that counsel's cross-examination of David Brave was based on reasonable trial strategy. *See Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (decisions at trial only reach the level of constitutional ineffectiveness if they are "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy" (quotation omitted)); *see also Richter*, 131 S.Ct. at 788.

Moreover, Applicant has not shown a reasonable probability that the outcome of his trial would have been an acquittal if defense counsel had questioned Brave further about this matter on cross-examination. *See Strickland*, 466 U.S. at 693. As such, Applicant cannot prevail on claim 2(iii) of the Application.

### 4. Failure to show that witnesses were regularly paid informants

Applicant next challenges counsel's failure to adequately investigate and present evidence that two trial witnesses (Stands and Brave) were regularly paid informants of the Bureau of Indian Affairs, which would have rebutted the evidence that the only money these witnesses received was from Crimestoppers. [Doc. # 1, at 15].

The state appellate court rejected this claim because Applicant failed to cite any evidence in the record to support it, and did not "even assert that they were paid by the police agency in this case." [*Lucero II*, Doc. # 11-6, at 28].

Again, the state court's factual findings are presumed correct and are unrebutted by Applicant. Allegations based on unsubstantiated assertions of fact are not sufficient to satisfy *Strickland. See Cummings v. Sirmons*, 506 F.3d 1211, 1228-29, 31-32 (10th Cir. 2007); *see also Johnson v. Alabama*, 256 F.3d 1156, 1186 (11th Cir. 2001) (no deficient performance where

applicant failed to identify "real impeachment evidence was available and could have been, but was not, pursued at trial"). Accordingly, the Court finds that the Colorado Court of Appeals reasonably resolved Applicant's claim under the *Strickland* standard. Claim 2(iv) will be dismissed.

### 5. Failure to show that LeBlanc could not identify Applicant outside the jury's presence

Applicant asserts that trial counsel was ineffective in failing to introduce evidence that in a hearing outside the jury's presence, witness Donald LeBlanc identified the co-defendant, but not Applicant. [Doc. # 1, at 15; *see also* State Court R. 5/21/87 Trial Tr., at 119-121].

The Colorado Court of Appeals rejected this claim on the ground that counsel requested that the jury be informed of LeBlanc's inability to identify Applicant at trial, but the trial court refused. [Doc. # 11-6, at 29].

The state appellate court's resolution of Applicant's claim was consistent with the *Strickland* standard. *See, e.g., Parker v. Scott*, 394 F.3d 1302, 1323 (10th Cir. 2005) (rejecting ineffective assistance of counsel claim challenging counsel's failure to offer evidence that was probably inadmissible and inconsistent with trial strategy); *United States v. Ambort*, No. 08-4004, 282 F. App'x 714, 717 (10th Cir. June 24, 2008) (unpublished) (counsel's failure to pursue evidence that is inadmissible is not deficient performance); *accord Jenner v. Class*, 79 F.3d 736, 740 (8th Cir. 1996) (given state supreme court's ruling that applicant was not entitled to an accomplice instruction under state law, there was no basis for concluding that defense counsel was deficient in not proposing instruction).

Moreover, because Applicant was being tried with co-defendant Borrego for the shooting, the fact that a witness could identify Borrego does not demonstrate a reasonable

24

probability that the jury would have acquitted the Applicant, had they been informed of the

identification.  Applicant thus cannot prevail on claim 2(v).

### 6.  Failure to impeach LeBlanc with his prior inconsistent statements

Applicant argues that trial counsel's failure to impeach LeBlanc about his prior

inconsistent statements to a police officer constituted deficient performance. [Doc. # 1, at 15].

The state appellate court rejected this claim on the following grounds:

> The potential discrepancies in Donald LeBlanc's testimony–e.g., his description
> of [Applicant] as both "scruffy" and having "a flat top," his approximation of the
> time of day when he saw [Applicant] near his apartment building, and precisely
> where [Applicant's] upper arm or shoulder was tattooed–are inconsequential in
> light of defense counsel's otherwise thorough cross-examination of him. [State
> case law citation omitted].  Further, [Applicant's] assertion that his photograph
> had not appeared in the newspaper before the time LeBlanc claimed to have seen
> it does not contradict LeBlanc's testimony.  On direct examination, LeBlanc did
> not specify when he had first seen the photograph.

[*Lucero II*, Doc. # 11-6, at 29].

The state appellate court's factual finding that defense counsel conducted a thorough

cross-examination of LeBlanc is supported by the state court record and has not been rebutted by

Applicant. [*See* State Court R. 5/21/87 Trial Tr. at 113, 125-138]. Again, the manner in which

counsel cross-examines a particular witness is a strategic choice and therefore "virtually

unchallengeable." *Strickland*, 466 U.S. at 690; *see Cannon v. Mullin*, 383 F.3d 1152, 1163-64

(10th Cir. 2004) (holding that counsel's failure to impeach a witness with inconsistent grand jury

testimony did not rise to a Sixth Amendment violation).   Reasonable jurists could not find

counsel's cross-examination was objectively unreasonable so as to violate the Sixth Amendment,

or that the Colorado Court of Appeals misapplied *Strickland* in analyzing this claim.  The Court

thus finds that Applicant is not entitled to habeas relief for claim 2(vi).

### 7.  Failure to cross-examine and investigate on the specific issues concerning Applicant and the co-defendant

Applicant asserts in claim 2(vii) that:

Trial Counsel also failed to adequately cross-examine and investigate on the issues of suspect #1 and suspect # 2, including the size of the individuals, the size of [the victim], and the types of guns possessed.  It was never made clear that the shorter of the two individuals was the one with the .45 gun.  Yet it was the .25 that was found in [co-defendant] Borrego's apartment.  Further, the [Applicant] is obviously much taller than Borrego.

[Doc. # 1, at 16].

Police who responded to the scene of the shooting recovered two expended .25 caliber cartridge casings and an expended .45 caliber cartridge casing.  [State Court. R., 5/18/87 Trial Tr., at 12].  The pathologist testified that the victim suffered small and large caliber bullet wounds, and that the large caliber bullet wound to the victim's heart and right lung caused him to bleed to death.  [*Id.* at 214-218].  The smaller caliber gunshot wounds did not cause the victim any internal injuries.  [*Id.* at 214].  An expert in firearms examination and bullet comparison testified that a .25 pistol found in Borrego's apartment was the same gun that fired a bullet that passed through the murder victim. [State Court R., 5/28/87 Trial Tr., at 25, 33; *see also* 5/19/87 Trial Tr., at 115].  The  gun that fired the fatal shot, a .45 revolver, was not recovered by the police.  [*Id.* 5/28/87 Trial Tr., at 28, 31; *see also* State Court R., 5/18/87 Trial Tr., at 12, 204-05, 213-14].

The Colorado Court of Appeals rejected Applicant's claim because he failed to specify what evidence counsel should have discovered and whether it would have been admissible and credible. [*Lucero II*, Doc. # 11-6, at 30].  The state appellate court further determined that "because [Applicant] and Borrego could have swapped guns after the crime, such evidence is

26

unlikely to have changed the outcome of trial." [*Id.*].

The state appellate court's determination that Applicant failed to show deficient performance by defense counsel was consistent with *Strickland*. *See Cummings*, 506 F.3d at 1228-29, 31-32 (allegations based on unsubstantiated assertions of fact are not sufficient to satisfy *Strickland*). Furthermore, it was reasonable for the state court to conclude that Applicant was not prejudiced in the face of his conclusory allegations. *See Boone*, 62 F.3d at 327 ("[A]ll that the Defendant urges is speculation, not a reasonable probability that the outcome would have been different); *see also Turrentine v. Mullin,* 390 F.3d 1181, 1205 (10th Cir. 2004) (petitioner "must show more than that his counsel's action had 'some conceivable effect on the outcome of the proceeding,' because '[v]irtually every act or omission of counsel would meet that test,'" quoting *Strickland*, 466 U.S. at 693 (alteration in original)). As such, Applicant is not entitled to federal habeas relief for claim 2(vii).

### 8. Failure to force disclosure of confidential informants

Applicant argues that trial counsel's performance was ineffective because counsel failed to force the disclosure of confidential informants so as to "rebut any hearsay regarding these informants." [Doc. # 1, at 16]. The state appellate court rejected this claim as speculative because Applicant failed to identify any such "hearsay." [*Lucero II*, Doc. # 11-6, at 31-32].

Again, the Court finds that the state appellate court's resolution of Applicant's claim was consistent with *Strickland*. *See Cummings*, 506 F.3d at 1228-29, 31-32 (allegations based on unsubstantiated assertions of fact are not sufficient to satisfy *Strickland*). Accordingly, claim 2(viii) does not warrant federal habeas relief.

### 9. Cumulative ineffective assistance

Finally, Applicant asserts that he is entitled to relief based on the cumulative prejudice that he suffered as a result of counsel's unprofessional conduct. [Doc. # 1, at 16].

Cumulative error is present when the "cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." *Duckett v. Mullin*, 306 F.3d 982, 992 (10th Cir. 2002) (quoting *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir.1990) (en banc)). "A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of trial is such that collectively they can no longer be determined to be harmless." *Id.* (quoting *Rivera*, 900 F.2d at 1470).  On federal habeas review, a cumulative error analysis applies only to cumulative constitutional errors. *Young v. Sirmons*, 551 F.3d 942, 972 (10th Cir. 2008).

There is a split in the Circuit Courts of Appeal as to whether the need to conduct a cumulative-error analysis is clearly established federal law under § 2254(d)(1).  See *Hooks v. Workman*, 689 F.3d 1148, 1194 n.24 (10th Cir. 2012).  The Tenth Circuit has indicated, however, that in the context of ineffective-assistance claims, "for AEDPA purposes, the cumulative-error inquiry is clearly established federal law.  *Id.*; *see also Littlejohn v. Trammell*, 704 F.3d 817, 869 (10th Cir. 2013) (recognizing that "[a]lthough we have never expressly held . . . that cumulative-error analysis is clearly established federal law, we have long conducted cumulative-error analyses in our review of federal habeas claims.") (collecting cases).  This Court need not resolve the issue because under the deferential AEDPA standard of review, Applicant is not entitled to relief.  The Colorado Court of Appeals determined that Applicant

failed to demonstrate deficient performance in conjunction with his ineffective assistance of counsel claims. This Court has concluded that the state appellate court's resolution of Applicant's ineffective assistance of counsel claims comported with *Strickland*. As such, there are no instances of inadequate performance for the Court to accumulate. *See Hooks*, 689 F.3d at 1194-95 (cumulative error "'does not apply . . . to the cumulative effect of non-errors'") (quoting *Moore v. Gibson*, 195 F.3d 1152, 1175 (10th Cir. 1999) (internal quotation marks and citation omitted); *United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990) ("[A] cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect [of non-errors]."). Because Applicant cannot show that the state appellate court's resolution of his cumulative error claim was contrary to any clearly established Supreme Court law, federal habeas relief is not warranted for claim 2(I).

## B.  Ineffective Assistance of Appellate Counsel

Applicant claims that direct appeal counsel was ineffective in failing to "fully raise all legal and factual matters relating to the severance issue raised on direct appeal." [Doc. # 1, at 16].

Applicant's claim of ineffective assistance of appellate counsel is governed by the *Strickland* standard. *See Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003); *Hannon v. Maschner*, 845 F.2d 1553, 1558 (10th Cir. 1988). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)).

The Colorado Court of Appeals resolved this claim as follows:

> *Lucero I* sets out several reasons for denying [Applicant's] severance motion and rejects at least three separate arguments for why a severance should have been granted. Hence, although the in-custody argument is not among them, we conclude that appellate counsel adequately raised the severance issue. *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) ([e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments . . ."). Further, [Applicant] does not assert that this argument was stronger than the arguments raised. [State case law citation omitted].
>
> Accordingly, [Applicant] has failed to establish that his counsel provided ineffective assistance on appeal.

[*Lucero II*, Doc. # 11-6, at 34].

The Colorado Court of Appeals' resolution of Applicant's claim was reasonable under *Barnes*. Applicant has not set forth any facts to show that the excluded argument was stronger than those presented on direct appeal. As such, Applicant is not entitled to federal habeas relief for claim 2(B).

## C. Cumulative Error

For his fourth claim, Applicant maintains that cumulative errors deprived him of his due process right to a fair trial. [Doc. # 1, at 19]. Claim four rests on Applicant's assertions that the trial court violated his due process rights in failing to hold a competency hearing sua sponte and in allowing him to be tried even though he was incompetent, together with his claims that trial counsel rendered constitutionally ineffective assistance. However, because Applicant has failed to show even a single constitutional error, his claim of cumulative error necessarily fails. *See Hooks*, 689 F.3d at 1194-95; *Rivera*, 900 F.2d at 1471. Accordingly, federal habeas relief is not warranted for claim four.

### D.  Prosecutorial Misconduct

Applicant asserts in claim six that the trial court violated his constitutional rights by failing to disqualify or at least sanction the district attorneys based on the following prosecutorial misconduct: (ii) an eye-witness statement was lost or destroyed; and,

(iv) the prosecution called Applicant and co-defendant "chili-eating bastards." [Doc. # 1, at 23].

#### 1.  Loss of eye-witness statement

Applicant first contends that his constitutional rights were violated when an eye-witness statement was lost or destroyed.

The state court record demonstrates that eye witness Thomas Amador made a formal written statement to Lakewood police officers, which was temporarily misplaced, but was later located and given to defense counsel prior to trial.  [State Court R. 2/2/87 Hrg. Tr., at 75-77, 114-15, 140-41].  The statement was introduced into evidence as a government exhibit, and was thereafter used by defense counsel to cross examine the witness. [State Court R. 5/20/87 Trial Tr., at 162-63, 208-09].

An accused's due process rights are violated under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), when the prosecution suppresses material evidence that was favorable to the accused as exculpatory or impeachment evidence.  See *Strickler  v. Greene,* 527U.S. 263, 281-82 (1999). Evidence is material if there is a reasonable probability that, "had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *United States v. Bagley*, 473 U.S. 667, 682 (1985).  "Impeachment evidence as well as exculpatory evidence falls within the *Brady* rule." *United States v. Young,* 45 F.3d 1405, 1408 (10th Cir. 1995) (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)).  In a late disclosure case, the materiality question is

whether there is a reasonable probability that the outcome of the trial would have been different had the State disclosed the information earlier. *See Young*, 45 F.3d at 1408 (the belated disclosure of impeachment or exculpatory information favorable to the accused violates due process when an "earlier disclosure would have created a reasonable doubt of guilt.") (citing *United States v. Rogers*, 960 F.2d 1501, 1511 (10th Cir. 1992); *see also United States v. Warhop*, 732 F.2d 775, 777 (10th Cir. 1984) (due process is satisfied if *Brady* material is disclosed before it is too late for the defendant to make use of the benefits of it).

The Colorado Court of Appeals determined that the temporary absence of the witness statement did not affect the verdict at Applicant's trial, where defense counsel used the statement during his cross examination of the witness who produced it. [*Lucero I*, Doc. #11-15, at 8]. The Court finds that the state appellate court's resolution of Applicant's claim was consistent with federal law. The witness statement was made available to defense counsel at or before trial and was used by counsel in cross-examining the witness. Applicant does not allege any facts to show how counsel would have used the statement differently if it had been produced at an earlier date. As such, Applicant cannot show that he was prejudiced by the late disclosure and, therefore, he is not entitled to habeas relief for claim 6(ii).

## 2. Improper remark by the prosecutor

Applicant next asserts that he was denied a fair trial because of an improper remark by the prosecutor outside the courtroom. On May 6, 1987, defense counsel and one of the prosecutors were engaged in plea negotiations in the hallway of the courthouse. During the conversation, the prosecutor referred to the Applicant and the co-defendant, who are both Hispanic, as "chili-eating bastards." [State Court R., 5/12/87 Hrg Tr., at 28,36].

32

During a hearing on the Applicant's motion to disqualify the prosecutor's office based on prosecutorial misconduct, the trial court found that even if the prosecutor's words evinced a racial bias, they did not show that the prosecution of Applicant and the co-defendant was racially motivated.  [*Id.*, 5/12/87 Hrg. Tr., at 111].  The trial court specifically concluded that there was no evidence of racial bias in the District Attorney's decision to prosecute and that the remarks of one of the prosecutor on the case were isolated, and outside the presence of the jury.  [*Id.* at 111-13].

Habeas relief is appropriate when a prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 180 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see also United States v. Young*, 470 U.S. 1, 11 (1985) ("Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding.").  In applying this demanding standard, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden*, 699 F.2d at 1036; *see also Tillman v. Cook*, 215 F.3d 1116, 1129 (10th Cir. 2000) (*"not every improper or unfair remark made by a prosecutor will amount to a federal constitutional deprivation.").

"The *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker v. Mathews*, 132 S.Ct. 2148, 2155 (2012) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The state appellate court concluded that "the decision to seek the death penalty and the conduct of the trial were free from obvious racial motivation and that [Applicant] failed to demonstrate a basis for disqualifying the prosecutor." [*Lucero I*, Doc. # 11-15, at 10].  The court

33

also observed that the Colorado Supreme Court had publicly censored the prosecutor for his inappropriate remarks. [*Id.* at 9, citing *People v. Sharpe*, 781 p.2d 659 (Colo. 1989)]. The Colorado Court of Appeals concluded that the trial court did not abuse its discretion in not disqualifying the prosecutor because the trial court record did not reveal that "disqualification was reasonably necessary to insure the integrity of the fact-finding process, the fairness or appearance of fairness of the trial, the efficient administration of justice, or public confidence in the criminal justice system." [*Id.* at 10].

The Supreme Court in *Donnelly* recognized that "not every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a failure to observe that fundamental fairness essential to the very concept of justice." 416 U.S. at 642 (internal citation and quotation marks omitted)). Here, the prosecutor's inappropriate remark was made outside the presence of the jury and Applicant has failed to point to any evidence that his criminal prosecution was racially-motivated. The Court cannot find that the state appellate court's resolution of Applicant's claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter,* 131 S. Ct. at 786–787. Accordingly, Applicant is not entitled to federal habeas relief for claim 6(iv).

## IV.  ORDER

Accordingly, it is ORDERED:

1.      Applicant Anthony J. Lucero's Application For a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. # 1) is DENIED and this case is DISMISSED on the merits.

2.      No certificate of appealability will issue because Applicant has not made a

substantial showing that jurists of reason would find it debatable whether the jurisdictional and

procedural rulings are correct and whether the Amended Application states a valid claim of the

denial of a constitutional right.

Dated this 29th day of May, 2013, at Denver, Colorado.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge

35